BEATTY, Justice.
Appeal by defendant, Olympia Molded Products, Inc. (“Olympia”), from summary judgment rendered in favor of plaintiff, Sevier Insurance Agency, Inc. (“Sevier”), in plaintiff’s action based upon open account and breach of contract. We affirm.
Plaintiff Sevier had obtained business insurance (apparently workmen’s compensation coverage) for the defendant Olympia, and this coverage had been in force for more than two years with the Chubb Insurance Group. Premiums were paid to Sevier. An outstanding balance on the premium existed. Carlton Rushin, secretary-treasurer of Sevier, communicated orally and by written correspondence with Ronald Robbins, secretary-treasurer of Olympia, informing him that the coverage would not be renewed unless the balance was paid. Upon the request of Robbins, Sevier had the Chubb Insurance Group coverage extended for nine days after the normal expiration date. Certain claims from injured employees of Olympia were filed during this nine-day extension. Because these claims were filed, the premium for the extension of the coverage was not waived.
The outstanding premium not having been paid by Olympia, Sevier brought this action in Jefferson County to recover it. Olympia moved to dismiss on the ground that Olympia did not do business in Jefferson County. At a hearing on this motion in Jefferson County, it was considered as a motion to transfer, and the Jefferson County court transferred the cause to St. Clair County. Thereafter, plaintiff filed its motion for summary judgment based upon the complaint and the affidavit, with exhibits, of Carlton Rushin. That affidavit follows:
“I, H. Carlton Rushin, of Sevier Insurance Agency, Inc., have under my supervision and control the books, records and accounts of said Sevier Insurance Company, Inc. and am familiar with the account of Olympia Molded Products, Inc. That upon my information, knowledge, and belief, the said Defendant is not an infant or incompetent person but is a corporation.
*40 “That on or about November, 1983, renewal policies of insurance were delivered to Olympia Molded Products, Inc. and were approved and accepted by a corporate officer. It was agreed that Sevier would set up an account for Olympia, and payment for the insurance coverage was to be paid in monthly installments on the three (3) largest policies. This was done as a courtesy to Olympia who did make four (4) payments on the account. The last payment was made June 8, 1984. Officers of Olympia were contacted concerning the delinquency of the account and finally, in approximately October, 1984, Olympia was advised that Sevier would not secure the renewal of Olympia’s insurance coverage on November 1, 1984, unless the outstanding balance was paid. At the request of Olympia, the undersigned did extend coverage for Olympia [beginning] November 1, 1984, through November 9,1984, in order for Olympia to obtain coverage elsewhere. At the present time, there is an outstanding balance owed by Olympia to Sevier in the amount of $16,427.28 plus interest. Attached and made a part ... of this affidavit is a breakdown of charges and payments on the account.”
, This affidavit was followed by a schedule of charges and payments on the Olympia account, together with the outstanding balance shown as $16,427.28.
Defendant Olympia, in opposition to plaintiff’s summary judgment motion, filed the affidavit of Ronald Robbins. This affidavit stated:
“My name is P. Ronald Robbins, and I am the Sec.-Treasurer of Olympia Molded Products, Inc., an Alabama corporation.
“Sevier Insurance Agency promised to extend coverages MP, BAP and W.C. through November 9, 1984.
“No such coverage was extended in that of several legitimate claims properly filed, none have been paid. Olympia Molded Products, Inc., is still being billed for the services that were supposed to be covered and is now receiving suit letters. Olympia did not receive the coverage for which they are being billed.
“These statements are made upon my personal knowledge and I handle the day-to-day business matters of Olympia Molded Products, am an officer, member of the board of directors, and a shareholder.”
At a hearing on plaintiff’s motion, Carlton Rushin testified for plaintiff, establishing that a balance was owed by Olympia (the affidavit and exhibits particularizing the amount owed were in evidence) and was unpaid. He also established that claims had been filed, and he identified a copy of a payment draft issued by Chubb on a workman’s claim. He testified further:
“Q. Did you pay the claim yourself?
“A. No.
“Q. Do you pay claims of Chubb? Does Sevier pay them?
“A. No, we don’t. We are the agent and broker for the company. We forward the loss notice to them, and they handle directly with the physician, drugstore, hospital, whoever under the Workmen’s Compensation law.”
In Ronald Robbins’s affidavit, set out above, he had stated that Sevier, by failing to pay certain claims, had failed to provide the coverage through November 9, 1984, and thus had breached its contract with Olympia. Yet, on cross-examination, Robbins testified to his lack of personal knowledge of such nonpayments:
“Q. Your job is what with Olympia?
“A. My job is — there are two of us that own Olympia, and my job runs the front office as far as the accounting aspect of management, order scheduling, purchasing necessary raw materials, all of the management activities.
“Q. Well, does a lady by the name of Carolyn Robbins handle the claims?
“A. She is my personnel manager.
“Q. Does she handle the claims for you?
“A. Yes.
“Q. She does the negotiations, and she sends the report of first injury; does she not?
*41 “A. She does.
“Q. Who does she send it to?
“A. To the insurance agency.
“Q. To the insurance agency. All right. Do you know if she sent one on November — on or about November 5th to Sevier Insurance Company on Reggie Swindle?
“A. Yes.
“Q. You know that of your own knowledge?
“A. Yes.
“Q. All right. Was there a claim for a Birmingham Radiological Group; do you know that?
“A. Do I know that?
“Q. Yes, sir, do you have any knowledge?
“A. I don’t know the details of that. I understand — or I do know that there were several claims filed during that 9-day period.
[[Image here]]
“Q. Let me show you — I think the issue is whether or not there was coverage from November 1st to November 9th.
“THE COURT: I notice the claim is not but $75.
“MR. HAMPE: Three hundred and twenty-five, I believe. It’s two hundred and fifty and there is one on November 1st.
“THE COURT: Okay.
“Q. Let me show you this copy of a check. It is a copy of the — photocopy of a check from the Chubb Group of insurance, that’s who you had your insurance with. It shows patient — claimant, Clifton Eugene Duck, is that one that you are claiming was not paid?
“A. Yes.
“Q. All right. And the date of loss is November 1st, 1984; is that right?
“A. Yes, sir.
“Q. And this check here shows that $48 was paid to Birmingham Radiological Group?
“MR. STEPHENS: I object to what the check shows. It’s on its face whatever it purports to show. He has not established the proper predicate.
“THE COURT: Overruled.
“Q. Is that what that shows?
“A. That’s what this piece of paper shows, yes.
“Q. So you don’t know that this was not paid, do you?
“A. That’s right.
“Q. You have not received anything from Birmingham Radiological Group to indicate this particular claim was not paid?
“A. No.
“Q. And you received a notice from Mr. Rushin at Sevier Insurance that they had extended your coverage?
“A. That’s correct.”
Moreover, Robbins conceded his lack of knowledge as to whether Sevier had extended Olympia’s coverage:
“Q. All right. I’m asking you do you have personal knowledge that Sevier did not notify and extend coverage with Chubb?
“A. No.
“Q. Your claim, if I understand, is that Chubb has not paid some — or your contention that Chubb has not paid some claims; is that correct?
“A. Yes.
“Q. But you don’t know that Mr. Rushin on behalf of Sevier did not extend the coverage; you have no personal knowledge of that, do you?
“A. That he did not extend the coverage?
“Q. Right.
“A. No.”
And, later, upon being questioned by the court, Robbins also conceded that the premiums billed to Olympia by Sevier as broker were for coverage under the policy and were undisputed by Olympia:
“THE COURT: Mr. Robbins, have you seen the bill that is attached to the statement, attached to the affidavit for summary judgment?
“THE WITNESS: Yes, I have.
“THE COURT: Did Sevier submit bills for those amounts from your company?
*42 “THE WITNESS: Yes.
“THE COURT: How often did you submit the bills?
“THE WITNESS: Generally on a monthly basis.
“THE COURT: On a monthly basis?
“THE WITNESS: Yes, sir.
“THE COURT: Did you dispute those bills with them at the time they were submitted?
“THE WITNESS: No.
“THE COURT: And the bills as set out in the affidavit sworn to here, is that for premiums on the coverage on the various — on the policies under the coverage under the policies there that was brokered through Sevier [sic]?
“THE WITNESS: Yes.
“THE COURT: Were those premiums that at the time of the initiation of the insurance contract that were submitted to you prior to the issuance of the contract of insurance?
“THE WITNESS: Repeat that.
“THE COURT: Were the premiums here that are set out in this statement that is attached to the affidavit here, were those premiums that were accepted by you in consideration for the issuing of the contract prior to the issuing of the contract for the periods covered here?
“THE WITNESS: Generally speaking, once we sat on the insurance contracts there were partial payments made throughout the year. These were set up on time payments. They were not something that was completely and entirely due before the acceptance.
“THE COURT: But the payments made through Sevier were for premiums that were set out under the contract of insurance?
“THE WITNESS: Yes.
“THE COURT: All right.”
Summary judgment practice requires that opposing affidavits be made on personal knowledge, showing affirmatively that the affiant is competent to testify to the matters stated. Rule 56(e), A.R.Civ.P. Day v. Merchants National Bank of Mobile, 431 So.2d 1254 (Ala.1983). Failure of the opposing party to contradict competent evidence of the moving party by like evidence leaves the court with no alternative but to consider his evidence uncontrovert-ed. Rule 56(e), supra. Whatley v. Cardinal Pest Control, 388 So.2d 529 (Ala.1980).
The action was brought by an insurance broker to recover an insurance premium that was due and unpaid. The defendant did not take issue with the amount of the premium, nor did it submit any competent evidence indicating that coverage had not been extended. Moreover, defendant’s agent asserted his speculation that some claims were unpaid, but never claimed that the debt for the premiums was not due. Indeed, defendant filed no counterclaim, nor did it attempt to file a third-party claim against Chubb Insurance Group. See Rule 13, A.R.Civ.P.
Under the evidence before the trial court, accordingly, summary judgment in favor of Sevier was eminently correct.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, AL-MON and HOUSTON, JJ., concur.